# EXHIBIT 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-----------------------------------------------------------------------x

Avrohom Manes,

**Plaintiff,**

- against -

**JPMORGAN CHASE BANK, N.A., EXPERIAN**
**INFORMATION SOLUTIONS, INC., EQUIFAX**
**INFORMATION SERVICES, INC., EQUIFAX, INC.,**
**TRANS UNION LLC, CBCINNOVIS, INC,**
**JOHN DOES 1-10 and JANE DOES 1-10,**

**Defendants.**

-----------------------------------------------------------------------x

Index No. 160642/2020
Date Summons Filed:

Plaintiff designates
New York County
as the place of trial

The basis of venue is
Defendant's residence in
New York

To the person(s) named as Defendants:

Defendants' addresses:  SEE ATTACHED RIDER

     PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the Plaintiff herein and to serve a copy of your answer on the Plaintiff at the address set forth below within twenty (20) days after the service of this Summons (not counting the day of service itself), or within thirty (30) days after service is complete if the Summons is not delivered personally to you within the State of New York.

     YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

The venue's basis is the county in which the Defendant resides and renders services in New York.

Dated: December 8, 2020.

ALBERT A. LEVY, ESQ.
17 Perlman Drive, Suite 215
Spring Valley, NY 10977
917-589-3737
aalesq@gmail.com

**AVROHOM MANES v. JP Morgan Chase Bank, N.A.,** *et al.*
Index No. 160642    /2020

## RIDER TO SUMMONS

| JPMORGAN CHASE BANK, N.A.<br>522 FIFTH AVE.<br>NEW YORK, NY 10036 | **Registered Agent:**<br>**CT Corporation System**<br>**28 Liberty Street**<br>**New York, NY 10005** |
| --- | --- |
| EXPERIAN INFORMATION SOLUTIONS,<br>INC.<br>475 ANTON BOULEVARD<br>COSTA MESA, CALIFORNIA, 92626 | **Registered Agent:**<br>CT Corporation System<br>28 Liberty Street<br>New York, NY 10005 |
| **EQUIFAX INFORMATIONS SERVICES, INC.**<br>**708 THIRD AVE.**<br>**NEW YORK, NY 10017** | **Registered Agent:**<br>**Corporation Service Company**<br>**80 State Street**<br>**Albany, NY 12207-2543** |
| EQUIFAX INC.<br>1550 PEACHTREE ST. NW<br>ATLANTA, GA 30309 | **Registered Agent:**<br>Prentice-Hall Corporation System, Inc.<br>80 State Street<br>Albany, NY 12207-2543 |
| TRANS UNION LLC<br>555 WEST ADAMS ST.<br>CHICAGO, IL 60661-3601 | **Registered Agent:**<br>Prentice-Hall Corporation System, Inc.<br>80 State Street<br>Albany, NY 12207-2543 |
| CBCINNOVIS, INC.<br>ATTN: CBC COMPANIES INC.<br>250 E. BROAD ST. 18TH FLR<br>COLUMBUS, OH, 43215 | **Registered Agent:**<br>Corporation Service Company<br>80 State Street<br>Albany, NY 12207-2543 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------------x

AVROHOM MANES,

                    **Plaintiff,**

               - against –

JPMORGAN CHASE BANK, N.A., EXPERIAN
INFORMATION SOLUTIONS, INC., EQUIFAX
INFORMATION SERVICES, INC., EQUIFAX, INC.,
TRANS UNION LLC, CBCINNOVIS, I.N.C.,
JOHN DOES 1-10 and JANE DOES 1-10,

                    **Defendants.**

------------------------------------------------------------------------x

Index No.  160642/2020

**(JURY DEMAND)**

## COMPLAINT

      Plaintiff, Avrohom Manes, by and through undersigned counsel, alleges for his

Complaint against Defendants as follows:

### NATURE OF THIS ACTION

    1.      This is a complaint for monetary damages, declaratory relief, and other legal and

equitable relief, costs, and attorney fees, arising from a Business Card Agreement (the

"Agreement") between Plaintiff ("Plaintiff" or "Mr. Manes") and Defendant JPMorgan Chase

Bank, N.A. ("Chase Bank"). Plaintiff seeks money damages against Chase Bank, John Does 1-

10, and Jane Does 1-10 ("Doe Defendants"), for Defendants' violations of the Fair Credit

Reporting Act, ("FCRA") 15 U.S.C. § 1681 *et seq.*, negligence, breach of contract, breach of

fiduciary duty, and deceptive and unfair trade practices under NY GBL § 349. Plaintiff also

seeks declaratory relief under NY CPLR § 3001 against Chase Bank, the Doe Defendants,

Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, Inc.

("Equifax Information"), Equifax Inc. ("Equifax""), Trans Union LLC ("TransUnion"), and

CBCInnovis, Inc. ("Innovis").

## THE PARTIES

### A. The Plaintiff

2.      Plaintiff is, and was at all times relevant herein, a resident of the state of New

York at 8 East Court, Pomona, NY 10970. On or about September 18, 2017 Plaintiff entered into

a Business Card Agreement for the benefit of his business Main Street Optical with Chase Bank.

On or about December 17, 2017 Plaintiff sold his business, and he provided Defendant Chase

Bank and the Doe Defendant(s) with a duly executed change of ownership form showing that he

no longer owns the business.

3.      Plaintiff is a "consumer" as defined in Section 1681$a$(c) of the FCRA.

### B. The Defendants

4.      Defendant Chase Bank is and was at all times relevant herein a national banking

association organized and existing under the laws of the United States, headquartered in the State

of New York and doing business in the State of New York. Chase Bank's registered agent for

service of process in New York is CT Corporation System, 28 Liberty Street, New York, New

York 10005.

5.      Chase Bank is a "furnisher" of consumer credit information as that term is used in

Section 1681$s$-2 of the FCRA.

6.      Defendants John Does 1-10 and Jane Does 1-10 (collectively, the "Doe

Defendants") are those individuals currently unknown to Plaintiff that engaged in the conduct

complained of herein. At all times relevant herein, the Doe Defendants were employees and

agents of Chase Bank and acting within the scope of that employment and agency and whose

knowledge can be imputed to Defendant Chase Bank. Plaintiff expects to amend this complaint to allege such names and capacities can be ascertained. Each of said fictitiously named Defendants is responsible in some manner for the wrongful acts for which Plaintiff has complained herein.

7.    At all times herein mentioned, each Defendant was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venture of each of the remaining Defendants. Each Defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of their predecessors-in-interest. Additionally, each Defendant has passed any and all liability to their successors-in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

8.    Defendant Equifax Information Services, Inc. ("Equifax Information") is and was at all times relevant herein a Consumer Reporting Agency ("CRA") as the term in used in the FCRA, registered as a foreign corporation doing business in the State of New York. Equifax Information's registered agent for service of process in New York is Corporation Service Company, 80 State Street, New York, NY 12207-2543.

9.    Defendant Equifax, Inc. ("Equifax") is and was at all times relevant herein a Consumer Reporting Agency ("CRA") as the term in used in the FCRA, registered and doing business in the State of New York. Equifax's registered agent for service of process in New York is The Prentice-Hall Corporation System, Inc., 80 State Street, Albany, NY 12207-2543.

10.    Defendant Experian Information Solutions, Inc. ("Experian") is and was at all times relevant herein a Consumer Reporting Agency ("CRA") as the term in used in the FCRA,

registered and doing business in the State of New York. Experian's registered agent for service of process in New York is CT Corporation System, 28 Liberty St., New York, NY 10005.

11.    Defendant Trans Union LLC ("TransUnion") is and was at all times relevant herein a Consumer Reporting Agency ("CRA") as the term in used in the FCRA, registered and doing business in the State of New York. TransUnion's registered agent for service of process in New York is The Prentice-Hall Corporation System, Inc., 80 State Street, Albany, NY 12207-2543.

12.    Defendant CBCInnovis, Inc. ("Innovis") is and was at all times relevant herein a Consumer Reporting Agency ("CRA") as the term in used in the FCRA, registered and doing business in the State of New York. Innovis' registered agent for service of process in New York is Corporation Service Company, 80 State Street, Albany, NY 12207-2543.

13.    Consumer reporting agencies collect credit information and financial history from furnishers of consumer credit such as Defendant Chase Bank and sell the information as "consumer reports" to paying subscribers (*i.e.*, lenders and similarly interested parties). At all relevant times, credit reports as alleged in this pleading are "consumer reports" as that term is defined by 15 U.S.C. § 1681n(d).

14.    At all times relevant herein Defendants Equifax, Equifax Information, TransUnion, Experian, and Innovis (collectively the "CRAs") received and disseminated incorrect and disputed information from Defendant Chase Bank and the Doe Defendants relevant to Plaintiff's credit and financial history.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

15.    Plaintiff restates and incorporates herein by reference, as though fully set forth herein, each and every fact, matter, and allegation set forth in Paragraphs 1 through 14 above.

16.     Plaintiff is a respected businessman and individual who takes pride in paying his bills on time and in full every month. He worked diligently to establish and maintain an excellent credit rating. Plaintiff's credit rating is essential for personal and business endeavors.

17.     Until Defendants, as more fully set forth below, breached the Agreement, violated the FCRA and other laws, and circumvented Defendants' procedures and protocols, reporting false and incorrect information to the consumer reporting agencies, Plaintiff understood his credit record and rating were excellent.

18.     However, Plaintiff attempted to secure a mortgage and learned his credit report contained what Plaintiff knew to be an erroneous negative report from Chase Bank. Defendant Chase Bank and the Doe Defendants had reported a debt of over twenty thousand dollars ($20,000.00) characterized to the CRAs by Defendants as a "write-off" by Chase Bank, thereby severely damaging Plaintiff's credit rating.

19.     Plaintiff did not authorize or incur this debt and it was erroneously, negligently, fraudulently and/or maliciously reported as a negative event to his personal credit rating.

20.     On or about December 2017, Plaintiff sold his ownership interest in an optical retail business, known as Main Street Optical (the "Business"), located at 39 Main Street, Monsey NY 10952. Concurrent with selling the Business, Plaintiff contacted Chase Bank through its representative Doe Defendant(s) and provided to Chase Bank via fax a duly executed change of ownership form clearly notifying Chase Bank that Plaintiff no longer owned the Business and would not use any credit cards associated with it.

21.     Plaintiff confirmed with Chase Bank and the Doe Defendant(s) that there was a zero balance on the account at the time he sold the Business and gave notice to Chase Bank of the change in ownership. Plaintiff thus notified Chase Bank that he would not be responsible,

personally or otherwise, for any further charges or debts accrued on this account, and demanded that his name be removed as a responsible party or otherwise that the account should be closed.

22.     Despite Plaintiff's compliance with Chase Bank's procedures and written change of ownership notification, Chase Bank ignored Plaintiff's notification and permitted the new owner of the Business, Sholom Gluck, to made charges on the account and accumulate debt on the account, which Chase Bank nevertheless attributed to Plaintiff to Plaintiff's detriment.

23.     Upon information and belief, Sholom Gluck and the Business accumulated debt on the account after Plaintiff had sold the Business and notified Chase to remove Plaintiff from the account or otherwise close the account. Upon information and belief, Mr. Gluck and the Business apparently later failed to pay the charges they had accrued without Plaintiff's authorization and thus defaulted on the account.

24.     Plaintiff diligently followed up with Chase Bank and its representative Doe Defendants by phone, email, and fax to confirm that his demand to be removed or to close the account was carried out, as per his explicit instructions and in accordance with the Agreement and state and federal laws.

25.     Plaintiff again advised Chase Bank in writing, as per the Agreement and relevant state and federal laws, that he did not authorize any charges on the account after the sale of his business, and that he is not responsible for any outstanding debt.

26.     In February 2018, Plaintiff received a statement listing both Plaintiff's and Mr. Gluck's names on the account and showing over $20,000 in debt charged after the sale of the Business. Plaintiff immediately contacted Chase Bank to confirm that it had received and processed Plaintiff's earlier notification that he no longer owns the Business associated with the account and that his name must be removed from the account or the account should be closed.

Plaintiff also confirmed that the account had a zero balance and there were no unpaid charges at the time Plaintiff sold the business and notified Defendant Chase Bank.

27. Plaintiff was concerned that his notification had not been timely processed by Chase Bank, and that Chase Bank had failed to carry out his demands per the Agreement and/or state and federal law.

28. On or about February 7, 2018, Plaintiff was informed by an agent, employee and representative of Defendant acting within the scope of its employment, that Plaintiff's faxed change of ownership had been received, and that his credit was being reviewed.

29. Plaintiff was further advised by an agent, employee and representative of Defendant Chase Bank acting within the scope of its employment, that said representative could not discuss the credit card account because the account is on someone else's name – Sholom Gluck, the buyer of the Business – and not in Plaintiff's name.

30. By refusing to discuss the account with Plaintiff, Chase Bank and the Doe Defendants acknowledged and admitted that they were aware a change of ownership had occurred, that Plaintiff no longer owned the account, and that the account was held solely in the name of the new owner, Sholom Gluck, who was liable for any debt incurred.

31. Despite Chase Bank's and the Doe Defendant(s)' open acknowledgment the account was held by the new owner and refusal to discuss the account with Plaintiff, Chase Bank and the Doe Defendants ignored Plaintiff's notifications that he was not responsible for debts charged or incurred after the sale of the Business, and they knowingly, purposefully, fraudulently, maliciously, and in bad faith continued to claim that Plaintiff was personally responsible for any and all debts accrued by Sholom Gluck on the account after the sale of the Business.

32.    Plaintiff continued his efforts and called Defendant again. Plaintiff had a telephone conversation with a person who identified himself as a supervisor named William Monty, of San Antonio, Texas. Mr. Monty, as an agent, employee and representative of Chase Bank acting within the scope of his employment, represented to Plaintiff that, contrary to an earlier Chase Bank representative's statements, Plaintiff's December 2017 faxed notification had not been received or processed.

33.    Plaintiff demanded that the Chase Bank supervisor, Mr. Monty, provide Plaintiff with an email address where Plaintiff could respond in writing that he had provided a written notification of the transfer of the Business in December 2017 and again notify Defendants that he had not authorized any subsequent charges on the account.

34.    Mr. Monty provided an email address to Plaintiff, and Plaintiff sent an email to that email address in which Plaintiff relayed the issues herein, and clearly and unambiguously notified Chase again that he had not authorized and would not be responsible for charges made or debts incurred on the account after the Business had been sold.

35.    Defendant Chase Bank and the Doe Defendants ignored this email, along with a follow-up email of February 9, 2018.

36.    In or around April 2018, Plaintiff reported an unauthorized and/or fraudulent charge claim, since any charges made or debts incurred under his name after the sale of the Business in December 2017 were never authorized, made, or incurred by Plaintiff.

37.    After much effort and difficulty, Plaintiff was provided by Chase Bank with yet another email address to document this dispute. Mr. Manes sent an email to this new address in which he forwarded his previously transmitted information to Chase Bank, the prior email again notifying Chase Bank in writing that he is not and would not be responsible for card charges

8 of 23

incurred after the change of ownership in December 2017, as well as a follow up message

demanding to know why Chase Bank was not acknowledging and acting upon Plaintiff's

demands. Chase Bank and the Doe Defendants never responded to Plaintiff's numerous notices

and communications.

38.     Defendants Chase Bank and the Doe Defendants knowingly, purposefully,

maliciously, and in bad faith ignored and circumvented the terms of the Agreement, bank

protocols and procedures and disregarded Plaintiff's timely and explicit instructions to remove

him from the account. Defendants Chase Bank and the Doe Defendants knowingly, purposefully,

maliciously, and in bad faith, falsely and/or negligently to the detriment of Plaintiff, attributed all

debt accumulated by Shalom Gluck, whom these Defendants acknowledged was the sole name

on the account, to Plaintiff as the responsible party. Defendants Chase Bank and the Doe

Defendants, knowingly, purposefully, maliciously, and in bad faith then falsely and/or

negligently characterized Shalom Gluck's debt as a "write-off" attributed to Plaintiff and

reported it to the Consumer Reporting Agencies, thereby damaging Plaintiff's credit rating.

39.     Chase Bank and the Doe Defendants misrepresented to Plaintiff that they were

processing his request, and as they had informed him he was not authorized to discuss the

account, these Defendants knew or should have known the information they were reporting and

was appearing as a negative entry on Plaintiff's credit report was obviously false.

40.     Plaintiff reasonably believed that such a ridiculous error could and would be

remedied easily.

41.     Plaintiff experienced and continues to experience tremendous stress to his

business endeavors as well as personal stress and anxiety as a direct result of Chase Bank's and

the Doe Defendants' repeated maliciously, bad faith and willful disregard of his instructions, the

continued false attribution of debt to him and the negative false credit reporting and profile that persists to this day.

42.     After several additional unsuccessful calls, emails and faxes to Chase Bank, on August 22, 2018, Plaintiff's attorney contacted Chase Bank by phone to dispute any references to a debt "write- off" appearing on Plaintiff's credit report.

43.     Plaintiff's attorney also provided Chase Bank with a written letter dated August 22, 2018 regarding Chase Bank's failure to follow Plaintiff's repeated explicit written instructions to remove his name from the account.

44.     Plaintiff reasonably trusted and believed that Chase Bank would fulfill its fiduciary duties and responsibilities, quickly correct what was an obvious error on Chase Bank's part, and update his credit report accordingly.

45.     Defendant Chase Bank and the Doe Defendants knowingly, maliciously, and in bad faith, purposefully refused to correct its false attribution of Shalom Gluck's debt to Plaintiff, despite routinely representing to Plaintiff that he could not close the account because he is not the owner.

46.     Chase Bank knew, or should have known, that the negative information it was reporting to the CRAs was false and damaging to Plaintiff and that it was Chase Bank's responsibility to correct such a blatant error.

47.     Chase Bank and the Doe Defendants in bad faith circumvented and ignored all bank protocol, procedures and relevant laws and purposefully did not investigate their failure to act on Plaintiff's written notification for change of ownership, his multiple follow-up communications, his disputes or their highly damaging and false financial reports to the CRAs. Chase Bank and the Doe Defendants have also prevented Plaintiff from accessing account

records for which he is being held responsible in order to prevent all efforts by the Plaintiff to resolve this matter.

48.     Chase Bank knows that an erroneous label of debt write-off appearing on a credit report can be harmful and detrimental to an individual or business seeking to be approved for a loan, mortgage, or obtain any form of credit.

49.     As of today, Plaintiff's credit reports continue to paint this false and damaging picture of Plaintiff and he has exhausted all methods of recourse with Chase Bank and the Doe Defendants who continue to refuse to officially recognize a duly executed and transmitted change of ownership notification that has been pending since December 2017, while simultaneously recognizing that Plaintiff is not the owner of the account.

50.     Plaintiff continued to follow up with Chase Bank and the Doe Defendants. On September 16, 2020 Plaintiff's attorney submitted a formal written dispute of the subject debt to Chase Bank's Credit Bureau Entry Dispute Processing and forwarded the same to Defendants Experian, Equifax and Trans Union.

51.     On October 17, 2020, Chase Bank and the Doe Defendants represented to Plaintiff's attorney in writing that the four major reporting agencies were not reporting this account. However, this representation is false. The credit reporting agencies still report a delinquent or charged off account from Chase Bank on Plaintiff's credit report.

52.     On November 24, 2020, almost three years after Plaintiff's first communication to Defendant Chase Bank, Plaintiff's counsel received a letter from Chase Bank claiming that Plaintiff is responsible for the outstanding debt on the account.

53.     Chase Bank's November 24, 2020 letter knowingly, willfully, maliciously and in bad faith does not acknowledge Plaintiff's three years of communications providing Chase Bank

11 of 23

with the required notifications in accordance with the Agreement, bank protocols and procedures.

54.    Chase Bank's November 24, 2020 letter knowingly, willfully, maliciously and in bad faith does not acknowledge receipt of Plaintiff's written notice of transfer of ownership of the Business or demand that his name be removed from the account.

55.    Chase Bank's November 24, 2020 letter knowingly, willfully, maliciously and in bad faith does not acknowledge Chase Bank's representation to Plaintiff that it could not discuss the account with Plaintiff because he is not the account owner. Chase Bank and the Doe Defendants had actual and constructive knowledge the account had been transferred, yet knowingly, willfully, maliciously and in bad faith refused or failed to take the appropriate steps to correct their error and protect Plaintiff's interests.

56.    In its November 24, 2020 letter, Chase Bank threatened Plaintiff with further derogatory actions, including a charge off, adverse tax consequences, and a report to the IRS, which would lead to yet another negative report to the CRAs.

57.    The entire experience has imposed upon Plaintiff significant distrust, frustration, and distress. It has rendered Plaintiff hopeless about his ability to regain his good name and the credit rating that he deserves and has worked hard to earn.

58.    As of today, Plaintiff remains unable to obtain a mortgage, loan, or business credit on appropriate terms because of the false and inaccurate credit data being reported by Chase Bank, all to the detriment of both his personal and business endeavors and reputations, costing him significant income.

59.    Absent litigation, Plaintiff will continue to suffer damage and harm by Chase Bank's breach of contract, violations of consumer reporting requirements, refusal to adhere to

procedure, protocols, and the fiduciary duty owed to Plaintiff to ensure credit reporting accuracy.

60.     Chase Bank and the Doe Defendants have failed and refused to provide transparent services and responsive communications, breached its Agreement with Plaintiff, willfully, maliciously and in bad faith circumvented and ignored their protocols and procedures, disregarded Plaintiff's timely communications, falsely attributed Sholom Gluck's charged off debt to the CRAs to Plaintiff, and failed and refused to maintain or update its business records in order to delay or deny Plaintiff's meritorious claims and demands since December 2017.

### FIRST CAUSE OF ACTION
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681*e* (b), 15 U.S.C. § 1681*i*(a)(1) and 15 U.S.C. § 1681*s*-2(b)(1)

61.     Plaintiff restates and incorporates herein by reference, as though fully set forth herein, each and every fact, matter, and allegation set forth in Paragraphs 1 through 60 above.

62.     Our society's digitalization has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens. Whether used by businesses, banks, or other institutions, data technology allows consumer information to flow instantaneously to requesting parties leading to faster and better decision-making by its recipients. All of society should ultimately benefit from the resulting convenience and efficiency.

63.     Unfortunately, this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can sustain substantial damage, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

64.     Consumer reporting agencies ("CRAs"), like Equifax, TransUnion, Innovis, and Experian sell to readily paying subscribers (*i.e.*, lenders and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying

for a car or mortgage loan, or the like.

65.    Since Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*

("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to

assure maximum possible accuracy" of the personal, private and financial information that they

compile and sell about individual consumers.

66.    One of the primary purposes in requiring CRAs to assure "maximum possible

accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting.
> Inaccurate credit reports directly impair the efficiency of the banking system,
> and unfair credit reporting methods undermine the public confidence which is
> essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

67.    The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all
> sorts of computerized data banks, the individual is in great danger of having his
> life and character reduced to impersonal "blips" and key-punch holes in a stolid
> and unthinking machine which can literally ruin his reputation without cause…
> as well as deny him the opportunity to obtain a mortgage to buy a home. *We are
> not nearly as much concerned over the possible mistaken turn-down of a
> consumer for a luxury item as we are over the possible destruction of his good
> name without his knowledge and without reason.*
> * * * *[A]s Shakespeare said, the loss of one's good name is beyond price and
> makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

68.    The FCRA also requires CRAs, as well as "furnishers" of credit information to

the CRAs, to conduct "reasonable investigations" into bona fide disputes by consumers claiming

to have inaccurate or incomplete information appearing in their credit files, to correct or update

any such errors or omissions, and to report back to the consumer the results of the investigation.

This requirement ensures greater accuracy.

69.     A "consumer reporting agency" is defined by the FCRA as follows:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681a (f).

70.     Chase Bank is a "furnisher" as that term is used in Section 1681s-2 of the FCRA.

71.     Section 1681n of the FCRA imposes civil liability on any C.R.A. or furnisher "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681n (a).

72.     Section 1681o of the FCRA provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act.

73.     As a direct and proximate result of Chase Bank's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as expressly mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to denial of mortgages, loss of opportunity to obtain credit, harm to reputation, the expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, and frustration.

74.     Chase Bank's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff.

75.     The injuries suffered by Plaintiff are attended by circumstances of malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorney's fees, and costs under 15 U.S.C.§ 1681n(a)(2).

76.     Plaintiff specifically advised Chase Bank on numerous occasions that Chase Bank had made a mistake, provided all necessary information to Chase Bank to correct the same, and requested his credit be updated accordingly.

77.    Either Chase Bank conducted *no* investigation of Plaintiff's disputes, or such "investigations" were so shoddy as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

### Chase Bank's Failure to Conduct Reasonable Investigations

78.    Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers regarding the accuracy of the information reported about them.

79.    Chase Bank had already been contacted on numerous occasions by Plaintiff, advising Chase Bank that its trade line on his Equifax credit report about a debt "write-off" was erroneous and that it was causing him problems with being approved for credit.

80.    Chase Bank failed to conduct a reasonable investigation into the accuracy of information related to the disputed credit line, in violation of Section 1681*s*-2(b) (1).

81.    Notwithstanding Chase Bank's actual knowledge that Plaintiff did not owe a debt as claimed by Chase Bank, Chase Bank's failure to conduct a reasonable investigation of the accuracy of its reporting of this adverse information shows a reckless disregard for Plaintiff's rights under the FCRA.

82.    Chase Bank's failure to report that Plaintiff disputed the accuracy of the trade line was a failure to accurately update the information because it was "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Plaintiff. *Gorman v. Wolpoff & Abramson, L.L.P., et al.*, 584 F.3d 1147 (9th Cir. 2009); *See also Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008).

83.    As a direct and proximate result of Chase Bank's willful and negligent refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage including, but not limited to: economic loss due to denial of mortgages, loss of opportunity to

obtain credit, harm to reputation, the expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration, and embarrassment, entitling him to an award of actual damages in amounts to be proved at trial, plus attorney's fees together with the costs of this action under 15 U.S.C. § 1681*o*.

84.     Chase Bank's complete and utter indifference to its obligations under the FCRA reveals a conscious disregard of Plaintiff's rights. Circumstances of fraud and malice attend the injuries suffered by Plaintiff, along with and willful and wanton misconduct, calling for an assessment of punitive damages against Chase Bank, per 15 U.S.C. § 1681*n*(a)(2).

85.     Upon information and belief, Chase Bank has exhibited a pattern and practice of refusing to correct consumer credit files despite being on notice of patently false information in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

### SECOND CAUSE OF ACTION AS TO
### DEFENDANT CHASE BANK AND THE DOE DEFENDANTS
### (GROSS NEGLIGENCE)

86.     Plaintiff restates and incorporates herein by reference, as though fully set forth herein, each and every fact, matter, and allegation set forth in Paragraphs 1 through 85 above.

87.     At all times relevant herein, Chase Bank and the Doe Defendants owed Plaintiff duties, including *among other things*, (a) a duty of care regarding the administration and operation of the Cardmember account and Agreement;(b) a duty to provide competent advice regarding the Cardmember account and Agreement including but not limited to managing the transfer and closing of a business account upon the sale of a business;(c) a duty to handle instructions related to the Cardmember account and Agreement as delivered by Plaintiff in a timely and commercially reasonable manner so as not to cause harm to Plaintiff; (d) a duty to

properly investigate and notify the Plaintiff regarding the events complained of herein so as to

not cause harm to Plaintiff; and (e) a duty to follow the Defendants' own rules and procedures

and federal and state law in responding to instructions and questions regarding an account.

88.     Defendant Chase Bank and the Doe Defendants, and each of them, breached said

duties by failing or refusing to, among other things, (a) properly administer the Cardmember

account and Agreement so as not to cause harm to Plaintiff ; (b) provide competent advice

regarding the Cardmember account; (c) handle instructions related to the Cardmember account

and Agreement as delivered by Plaintiff in a commercially reasonable manner so as to not cause

harm to Plaintiff; (d) properly and promptly investigate and notify the Plaintiff regarding the

events complained of herein so as to not cause harm to Plaintiff; and (e) failing to follow

Defendants' own rules and procedures and federal and state law in responding to instructions and

questions regarding an account.

89.     Chase Bank's and the Doe Defendants' breaches are wanton, reckless, careless,

and egregious in light of Plaintiff's explicit instructions that he had sold the Business, provided

written proof of transfer, and expressly requested his name be removed from the account or the

account closed.

90.     As a direct and proximate cause of these Defendants' negligence and gross

negligence, Plaintiff has incurred damages in an amount to be determined at trial, but not less

than $100,000.

91.     Based on the foregoing, Plaintiff is also entitled to an award of Punitive damages.

### THIRD CAUSE OF ACTION AS TO
### DEFENDANT CHASE BANK AND THE DOE DEFENDANTS
### (BREACH OF FIDUCIARY DUTY)

92.     Plaintiff restates and incorporates herein by reference, as though fully set forth

herein, each and every fact, matter, and allegation set forth in Paragraphs 1 through 88 above.

93.      Prior to the Defendants' failure and refusal to officially process the Plaintiff's duly executed and transmitted notification of transfer of ownership of the business and business Cardmember account, Defendant Chase Bank and the Doe Defendants had a fiduciary duty to Plaintiff, which included among other things, a duty to exercise the utmost good faith, honesty, and fair dealing in advising and instructing Plaintiff regarding the Cardmember account and Agreement, as well a duty to faithfully carry out Plaintiff's instructions regarding the Cardmember account.

94.      Defendants breached said duty by, among other things, their failure or refusal to exercise good faith and honesty in administering and service the Cardmember Account, and by their failure or refusal to carry out Plaintiffs instruction regarding the Cardmember account faithfully.

95.      As a direct and proximate cause of these Defendants' negligence and gross negligence, Plaintiff has incurred damages in an amount to be determined at trial, but not less than $100,000.

96.      Based on the foregoing, Plaintiff is also entitled to an award of Punitive damages.

## FOURTH CAUSE OF ACTION AS TO
## DEFENDANT CHASE BANK AND THE DOE DEFENDANTS
## (BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING and FAIR DEALING)

97.      Plaintiff restates and incorporates herein by reference, as though fully set forth herein, each and every fact, matter, and allegation set forth in Paragraphs 1 through 93 above.

98.      As a result of the aforementioned Cardmember Agreement and Account that existed between Plaintiff and the Defendant Chase Bank, or as a result of their banking relationship and common law duties, Defendants were and are required to discharge their

obligations to Plaintiff in good faith, including, but not limited to, Defendants' obligations to follow Plaintiff's instructions and to properly investigate his claims, objections, and complaints, and act on his instructions through clear, set procedures implemented by competent employees and management.

99.    As a direct and proximate cause of these Defendants' negligence and gross negligence, Plaintiff has incurred damages in an amount to be determined at trial, but not less than $100,000.

100.    Based on the foregoing, Plaintiff is also entitled to an award of Punitive damages.

## FIFTH CAUSE OF ACTION AS TO
## DEFENDANT CHASE BANK AND THE DOE DEFENDANTS
## (BREACH OF CONTRACT)

101.    Plaintiff restates and incorporates herein by reference, as though fully set forth herein, each and every fact, matter, and allegation set forth in Paragraphs 1 through 97 above.

102.    Upon information and belief, an Agreement existed between Plaintiff and Defendant Chase Bank by which, among other things, Defendant Chase Bank was obligated to take appropriate steps immediately upon receiving written notification regarding the ownership and control of the Cardmember account.

103.    The foregoing actions by Defendant Chase Bank and the Doe Defendants

104.    At all relevant times Plaintiff complied with the terms of the Agreement and Cardmember account.

105.    As a direct and proximate cause of these Defendants' negligence and gross negligence, Plaintiff has incurred damages in an amount to be determined at trial, but not less than $100,000.

106.    Based on the foregoing, Plaintiff is also entitled to an award of Punitive damages.

### SIXTH CAUSE OF ACTION AS TO
### DEFENDANT CHASE BANK AND THE DOE DEFENDANTS
### (NY GBL § 349/DECEPTIVE AND UNFAIR TRADE PRACTICES)

107.    Plaintiff restates and incorporates herein by reference, as though fully set forth herein, each and every fact, matter, and allegation set forth in Paragraphs 1 through 103 above.

108.    At all times relevant herein, Defendants were engaged in banking, a consumer-oriented act or practice.

109.    Defendant Chase Bank and the Doe Defendants assured Plaintiff that upon receipt of written notification of transfer, they would remove the Plaintiff's name from the Cardmember account. Systematically providing Plaintiff with false information that the request had been processed when, in fact, he remained on the account, and falsely advising the Plaintiff that CRAs were not reporting his account, are acts or practices that have a broader impact on consumers at large." Defendants misled the Plaintiff, a consumer, in a material way.

110.    As a result of the Defendants' materially misleading consumer acts or practices regarding the Cardmember account and Agreement, Plaintiff suffered actual damages that exceed the lower courts' jurisdictional limits.

111.    As a result of the foregoing, Plaintiff is also entitled to an award of costs and attorney fees.

**WHEREFORE**, Plaintiff, Avrohom Manes, respectfully requests that this Court enter judgment against Defendants as follows:

A)      As and for Plaintiff's First Cause of Action, Plaintiff seeks:

      1)      An order declaring that the actions of Defendant Chase Bank and the Doe Defendants violate The Fair Credit Reporting Act, 15 U.S.C. § 1681$e$ (b), 15 U.S.C. § 1681$i$(a)(1) and 15 U.S.C. § 1681$s$-2(b)(1);

      2)      An order declaring that Defendant Chase Bank is required to provide a letter of explanation to Plaintiff's creditors and parties identified by the Plaintiff who refused him business or personal credit as a direct result of the actions of Chase Bank and the Doe Defendants and false reporting;

      3)      An order declaring that Plaintiff did not and does not owe the debt falsely attributed to him by Defendant Chase Bank and reported to the CRAs since December 2017;

      4)      An order declaring that the CRAs must correct Plaintiff's credit report and record back to December 2017, remove all negative reports and entries received from Defendant Chase Bank and the Doe Defendants regarding the Cardmember Account that is the subject of this lawsuit, and make any and all changes necessary to reflect that there was never any outstanding debt by Plaintiff to Defendant;

      5)      An award of punitive damages as provided for by 15 U.S.C. § 1681$n$ (2), statutory damages as provided for by 15 U.S.C. § 1681$n$ (2), and costs and attorney's fees as provided for by 15 U.S.C. § 1681$n$ (3) and 15 U.S.C. § 1681$o$ (2);

B)      As and for Plaintiff's Second Cause of Action, Plaintiff demands an award of damages in an amount to be determined at trial, but not less than $100,000, plus punitive damages and attorney's fees;

C)      As and for Plaintiff's Third Cause of Action, Plaintiff demands an award of damages in an amount to be determined at trial, but not less than $100,000, plus punitive damages and attorney's fees;

D)      As and for Plaintiff's Fourth Cause of Action, Plaintiff demands an award of damages in an amount to be determined at trial, but not less than $100,000, plus punitive damages and attorney's fees;

E)      As and for Plaintiff's Fifth Cause of Action, Plaintiff demands an award of damages in an amount to be determined at trial, but not less than $100,000, plus punitive damages and attorney's fees;

Case 1:20-cv-11053-VEC Document 1-1 Filed 12/30/20 Page 26 of 26

F)      As and for Plaintiff's Sixth Cause of Action, Plaintiff demands an award of damages in an amount to be determined at trial, but not less than $100,000, plus punitive damages and attorney's fees;

Together with such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 8, 2020.

ALBERT A. LEVY, E.S.Q.
17 Perlman Drive, Suite 215
Spring Valley, NY 10977 917-589-3737
917-589-3737
aalesq@gmail.com